UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. _____

IN RE: APPLICATION OF

BANCO DEL AUSTRO, S.A.
_____/

**BANCO DEL AUSTRO'S APPLICATION AND SUPPORTING
MEMORANDUM OF LAW FOR DISCOVERY ASSISTANCE IN
<u>PENDING LITIGATION IN HONG KONG</u>**

The Applicant Banco Del Austro, S.A. ("**Banco Austro**") submits this Application and accompanying Memorandum of Law (the "**Application**") in support of its request pursuant to 28 U.S.C. Section 1782(a) ("**Section 1782**") for assistance in the gathering of evidence in aid of judicial proceedings currently pending before the High Court of the Hong Kong Special Administrative Region, case number HCA 477/2015, for claims related to the fraudulent transfer of over $9,000,000 from Banco Austro's bank accounts (the "**Hong Kong Litigation**"). At least two of the recipients of funds from the fraudulent transfers are located within this District and moreover additional recipients have established bank accounts with several financial institutions that are located in or have a presences within this District, including, without limitation, Bank of America, Bank United, Wells Fargo Bank, N.A., HSBC Bank USA, NA, The Bank of New York Mellon, and JP Morgan Chase (collectively referred to as "**Respondent Banks**").

**I.      PRELIMINARY STATEMENT**

The purpose of Banco Austro's request to conduct discovery in aid of foreign proceedings is to assist in the gathering of evidence in aid of the Hong Kong Litigation that

Banco Austro has filed against several defendants located in Hong Kong[1] for claims including cyber fraud and money laundering seeking monetary damages and injunctive relief. Through the Hong Kong Litigation, Bank Austro has been able to trace the funds that were fraudulently transferred from its accounts. A significant portion of those funds were transferred into bank accounts at the Respondent Banks. The evidence sought by Banco Austro through this Application, which seeks information related to those bank accounts, cannot be obtained in the Hong Kong Litigation, is outside the reach of Hong Kong courts, and can only be obtained through this Court's judicial assistance under Section 1782.

## II.     FACTUAL BACKGROUND

Banco Austro is an Ecuadorian bank. (Declaration of Attorney Grant Smith, dated June 9, 2015, "Smith Decl.," ¶2). It maintains several operating accounts with banks in the United States of America, including an account at Wells Fargo Bank, N.A. and Citibank, N.A. (collectively "**U.S. Accounts**"). (*Id.* at ¶3). Banco Austro uses the U.S. Accounts for its international banking operations, including funding overseas payments and wiring transfers requested by its clients in Ecuador. (*Id.* at ¶4). For example, when one of its clients in Ecuador needs to pay a provider outside of Ecuador, Banco Austro generates a transfer out of its U.S. Accounts to pay that provider. (*Id.*). This is a common and authorized practice in the

---

[1] The defendants named in the Hong Kong Litigation are: JGM Asia Telecom Limited, Jiushun Group Co., Ltd., Regal Prosper Trading Limited; Mester Trading Corporation Co., Limited; Blood Science & Technology (HK) Limited; Homecare Technology Limited; Vicreate Industrial (HK) Co., Limited; HK Keyu Electronics Development Limited; Biaoyu Electronics (HK) Co., Limited; Hong Kong QXSF Technology Limited; Aiweili Import & Export Limited; Depot Trading Limited; AOLAIT Lighting Co., Limited; Ding Sheng Import & Export Limited; Deshunkang Import and Export Limited; Healthy Food Limited; Fopoconn Electronic (HK) Co., Limited; Sikieye International Trading Co., Ltd; On Tak Lung Trading Ltd; Samdimon – HK Limited; HongMing Group Limited; Oulong International Trading Co., Ltd; and Hong Kong Shenghua Trading Co., Ltd. Collectively these companies will be referred to as "**Hong Kong Defendants.**" (Smith Decl. ¶11).

Ecuadorian banking industry.  (*Id.* at ¶5).  Banco Austro generated these transfers using the Society for Worldwide Interbank Financial Telecommunication network (the "**SWIFT Network**"), which must be accessed from within Banco Austro's computer system.  (*Id.* at ¶6).

On January 21, 2015, after conducting a regular audit of the Wells Fargo account, Banco Austro discovered that several unauthorized debits had been posted to that account.  (*Id.* at ¶7).  Banco Austro immediately opened an internal investigation to determine the origin of these transactions and discovered considerable funds were transferred from its U.S. Accounts in a series of unauthorized transactions (the "**Unauthorized Transfers**").  (*Id.* at ¶8).  Through the investigation, Banco Austro discovered that for each of the Unauthorized Transfers, an unauthorized user remotely accessed Banco Austro's computer system after hours, logged onto the SWIFT Network purporting to be Banco Austro, and redirected transactions to new beneficiaries with significant dollar amounts.  (*Id.*).

Upon discovering the Unauthorized Transfers, Banco Austro informed its banks and the other banks that received the Unauthorized Transfers from its U.S. Accounts about the fraudulent nature of the transactions and sought to have the transactions cancelled and its funds returned. (*Id.* at ¶9).  Although Banco Austro was able to recover substantial sums by working with various recipient and intermediary banks, it was not able to recover substantial funds transferred to several Hong Kong entities with bank accounts at Hongkong and Shanghai Banking Corporation Limited ("**HSBC**") in Hong Kong.  (*Id.* at ¶10).  Accordingly, Banco Austro initiated proceedings in Hong Kong against the Hong Kong Defendants to recover funds from the Unauthorized Transfers.  (*Id.* at ¶11).

In the Hong Kong Litigation, Banco Austro asserts several claims seeking monetary damages and other relief against each of the Hong Kong Defendants.  (*Id.* at ¶12).  The claims

asserted include (1) unlawful receipt and retention of the funds from the Unauthorized Transfers, (2) unjust enrichment and restitution, (3) injunctive relief to prevent the further distribution and dissemination of the Unauthorized Transfer funds, and (4) an accounting related to the Unauthorized Transfer funds received by the Honk Kong Defendants. (*Id.*). In the Hong Kong Litigation, Banco Austro has obtained information, primarily from HSBC, that has allowed it to trace the funds from the Unauthorized Transfers. (*Id.* at ¶13).

As a result, Banco Austro was able to trace some of the funds from the Unauthorized Transfers to several bank accounts with the Respondent Banks, some held in the name of Florida residents – JGM Communications, Inc., a Florida corporation located in Doral, Florida, and Nectali Martinez Hernandez, an individual residing in West Palm Beach, Florida. (*Id.* at ¶¶15-17). Neither of these Florida residents is not a party to the Hong Kong Litigation nor subject to the jurisdiction of the Hong Kong courts. (*Id.* at ¶15). The Respondent Banks are not party to the Hong Kong Litigation either and are not subject to the jurisdiction of the Hong Kong courts. (*Id.* at ¶20). Accordingly, they cannot be required to provide the information Banco Austro needs to further trace the funds from the Unauthorized Transfers. (*Id.*). If the Respondent Banks or the Florida residents were subject to the jurisdiction of the Hong Kong courts, however, the information sought in this Application would be accessible in the Hong Kong Litigation. (*Id.*).

### III. ARGUMENT

Section 1782 provides this Court with ample discretion to allow for the taking of discovery consonant with the Federal Rules of Civil Procedure to assist a foreign tribunal in its proceedings. Section 1782 in part provides:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . The order may be made . . . upon the application of any interested person and may direct that the

4

testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

The current version of Section 1782 was amended in 1964 "to facilitate the conduct of litigation in foreign tribunals, improve international cooperation in litigation, and put the United States into the leadership position among world nations in this respect." *In re Bayer AG*, 146 F.3d 188, 191-92 (3d Cir. 1998). According to the Senate Report that accompanied the final iteration of the bill comprising Section 1782: "Congress hoped to encourage foreign countries to revise their judicial procedures similarly." *In re Application of Asta Médica, S.A.*, 981 F.2d 1, 5 (1st Cir. 1992) (citing S. Rep. 180, 88th Cong. 2d Sess., reprinted in 1964 USCCAN 3782, 3788 (1964)).

Federal courts overwhelmingly underscore that Section 1782 "reflects a congressional desire to increase the power of district courts to respond to the requests for international assistance." *In re Request for Assistance from Ministry of Legal Affairs of Trinidad and Tobago*, 848 F.2d 1151, 1154 (11th Cir. 1988) (citing *In re Letters Rogatory from the Tokyo District, Tokyo, Japan*, 539 F.2d 1216, 1218 (9th Cir.1976)). In tracing the general contours of congressional intent the court in *Trinidad and Tobago* enunciated that Congress deliberately broadened the scope of Section 1782 to: (*i*) include not only depositions and testimony, but also obtaining documents and other tangible evidence; (*ii*) permit U.S. district courts to assist proceedings in "foreign tribunals" not just "courts;" (*iii*) allow an "interested person" (not just a foreign tribunal) to request judicial assistance, and (*iv*) eliminate the requirement that discovery be used in *a pending* foreign proceeding, and only require that it be used in a foreign proceeding or tribunal.[2]

---

[2] The court in *Trinidad and Tobago* carefully canvassed and explained the history of Section 1782 as follows:

Similarly, the Fifth Circuit has stated that "the twin aims of the statute . . . are to provide efficient means of assistance to participants in international litigation in our federal courts and to encourage foreign countries by example to provide similar means of assistance to our courts." *Texas Keystone Inc. v. Prime Natural Resources, Inc.*, 694 F.3d 548, 553-554 (5th Cir. 2012) (citation omitted). *See also Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76 (2d Cir. 2012) (The goals of the statute are to provide "equitable and efficacious" discovery procedures in United States courts "for the benefit of tribunals and litigants involved in litigation with international aspects," and to "encourag[e] foreign countries by example to provide similar means of assistance to our courts," (internal citations omitted).[3]

---

The Act of March 2, 1855 first authorized federal courts to assist foreign tribunals. This statute granted federal courts the power to compel the testimony of witnesses in order to assist foreign courts. The passage of the Act of March 3, 1863, however, soon restricted this first statute. The 1863 Act allowed the United States courts to obtain testimony to assist foreign courts only if such testimony was for use in suits (1) that pertained to the recovery of money or property, (2) which were pending in a foreign country with which the United States was at peace, and (3) in which the government of the foreign country was a party or had an interest. This 1863 statute, with its limitations, remained relatively unchanged until 1948. Beginning in 1948, Congress enacted several amendments that broadened the scope of the statute. The 1948 amendment deleted the requirement that the foreign government be a party or have an interest in the suit. Congress also changed the limitation that the "suit be for the recovery of money or property" and eventually only required that the action be a "judicial proceeding." . . . During this time, however, Congress retained the requirement that the judicial proceeding be pending in a foreign country with which the United States was at peace. In 1964 Congress enacted the most recent amendments to section 1782. These modifications marked a significant departure from Congress' cautious approach to international judicial assistance. Congress adopted, without objection, a set of proposals submitted by the Commission on International Rules of Judicial Procedure that revised section 1782. The legislative history demonstrates that the purpose underlying the proposals was to encourage other nations to follow the lead of the United States and to adjust their procedures in order to improve practices of international cooperation in litigation.

The decision then goes on to describe how the 1964 amendments broadened Section 1782 in the four ways set forth above.

[3] *See also Lancaster Factoring Co., Ltd. v. Mangone,* 90 F.3d 38, 41 (2d Cir. 1996) (quoting S. Rep. No. 1580, 88th Cong., 2d Sess. 2 (1964) *reprinted in* 1964 U.S.C.C.A.N. 3782, 3783); *In re Gianoli Aldunte,* 3 F.3d 54, 58 (2d Cir. 1993); *In re: Ishihara Chemical Co.,* 251 F.3d 120, 124 (2d Cir. 2001) (twin aims of § 1782 are (i) "to provide efficient means of assistance to participants in international litigation in our federal courts," and (ii) "to encourage 'foreign countries by example to provide similar

As explained by the Supreme Court in its only Section 1782 opinion in *Intel Corp. v. Advanced Micro Devices*, 542 U.S. 241, 247 (2004), "Section 1782 is the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals."  *See also In re Consorcio Ecuatoriano de Telecomunicaciones S.A.*, 685 F.3d 987, 998 (11th Cir. 2012) ("The history of Section 1782 reveals Congress' wish to strengthen the power of district courts to respond to requests for international assistance.") (internal citations and quotations omitted).  "Once discovery is authorized under § 1782, the federal rules, Fed. R. Civ. P. 26-36, contain the relevant practices and procedures for the taking of testimony and the production of documents."  *Texas Keystone*, 694 F.3d at 554, fn. 3 (quoting *Weber v. Finker*, 554 F.3d 1379, 1384 (11th Cir. 2009)).

### A.   <u>Banco Austro meets the statutory requirements of Section 1782.</u>

Three statutory requirements must be met for a grant of assistance under Section 1782: (*i*) that the person from whom discovery is sought resides or is found in the district; (*ii*) that the discovery is for use in a proceeding before a foreign tribunal; and (*iii*) that the application is made by a foreign or international tribunal or "any interested person."  *Schmitz v. Bernstein, Liebhard & Lifshitz, LLP*, 376 F.3d 79, 83 (2d Cir. 2004).  Banco Austro meets all three statutory requirements under Section 1782.

---

means of assistance to our [U.S.] courts"); *In re Edelman*, 295 F.3d 171, 175 (2d Cir. 2002) ("At bottom, this statute affords access to discovery of evidence in the United States for use in foreign proceedings."); *In re Letter Rogatory from the Nedenes District Court, Norway,* 216 F.R.D. 277, 279 (S.D.N.Y. 2003) ("Therefore, granting a motion to compel . . . to provide a blood sample would efficiently assist a request made by the Norwegian Court and would encourage Norway to provide similar assistance to our courts."); *In re Application of Grupo Gamma, S.A. de C. V.,* 2005 WL 937486, *1 (S.D.N.Y. April 22, 2005); *In re Request of Oric,* 2004 WL 2980648 (N.D. Ill. 2004); *In re Application of Servicio Pan Americano de Proteccion, S.A.,* 354 F. Supp. 2d 269, 273 (S.D.N.Y. 2004); *In the Matter of the Application of the Procter & Gamble Co.,* 334 F. Supp. 2d 1112, 1113 (E.D. Wis. 2004).

1. <u>Respondent Banks are "Persons" within this Court's jurisdiction as required by Section 1782.</u>

Under Section 1782, this Court may order a person who "resides or is found" in this District to give testimony or produce documents. *The Dictionary Act* containing the definitions that govern the meaning of the terms of congressional enactments provides that "unless the context indicates otherwise," the word "person" includes "corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals." 1 U.S.C. § 1. Respondent Banks are "persons" who "reside" and are "found" in this District because they have offices in Miami, Florida. Moreover, Banco Austro has reasons to believe that the bank accounts that are the subject of the discovery sought – the ones held by JGM Communications, Inc. and Nectali Martinez Hernandez – were serviced out of the branches of Respondent Banks located in this District. Respondent Banks, therefore, are subject to this Court's jurisdiction under Section 1782.

2. <u>The Hong Kong Litigation satisfies Section 1782's "Foreign Proceeding" requirement.</u>

The discovery in this Application satisfies Section 1782's requirement that it be "for use in a proceeding in a foreign or international tribunal" because it will be used in the Hong Kong Litigation, which is an adjudicative proceeding abroad. *See Lancaster*, 90 F.3d 38 at 41 (2d Cir. 1996) ("We have interpreted this to mean a proceeding in which an adjudicative function is being exercised.") (citing *In re Letters Rogatory Issued by the Director of Inspection of the Government of India,* 385 F.2d 1017, 1021 (2d Cir. 1967)).

For clarification purposes, the "for use in" language in Section 1782 "does not have a foreign-discoverability nor a foreign-admissibility requirement." *In re Application for an Order for Judicial Assistance in a Foreign Proceeding in the Labor Court of Brazil,* 466 F. Supp. 2d 1020, 1029 (N.D. Ill. 2006); *see also In re Consorcio Ecuatoriano de Telecomunicaciones S.A.,*

8

685 F.3d at 999. Instead, it "mirrors the requirements in Federal Rule of Civil Procedure 26(b)(1) and means discovery that is relevant to the claim or defense of any party, or for good cause, any matter relevant to the subject matter involved in the foreign action." *In re Application for an Order for Judicial Assistance in a Foreign Proceeding in the Labor Court of Brazil,* 466 F. Supp. 2d at 1029. The discovery sought from the Respondent Banks relates directly to the Unauthorized Transfers and is necessary for tracing the funds from those fraudulent transactions. The discovery requested, as described in the Proposed Order attached as **Exhibit A**, is limited in scope to the time period relevant to the Unauthorized Transfers and limited to the accounts and transactions that relate to the Unauthorized Transfers. Such discovery is permissible under the Federal Rules of Civil Procedure.

3.  <u>Banco Austro is an "Interested Person."</u>

Section 1782 allows the request for judicial assistance to be made (1) through a Letter or Rogatory or similar request issued by a "foreign or international tribunal," or (2) upon application by any "interested person." As the Supreme Court held in *Intel*, while Section 1782 is not limited to parties to a foreign proceeding, foreign "litigants are included among (and may be the most common example of) the 'interested persons' who may invoke Section 1782." *Intel*, 542 U.S. at 256.[4] Banco Austro, as the plaintiff in the Hong Kong Litigation, clearly is an interested person under Section 1782.

---

[4] *See also In re Ishihara,* 251 F.3d at 124 (Section 1782 provides sufficient means of assistance "to participants in international litigation in our federal courts"); *Lancaster,* 90 F.3d at 42. (agent for court appointed trustee of foreign debtor was an "interested person;" "The legislative history to § 1782 makes plain that 'interested person' includes 'a party to the foreign . . . litigation" (quoting Senate Report at 8, 1964 U.S.C.C.A.N. at 3789); *In re: Application of Esses,* 101 F.3d 873, 875-876 (2d Cir. 1996) (finding that brother of person who died intestate in a foreign country was an "interested person"); *In re Letter of Request from the Crown Prosecution Service of the United Kingdom,* 870 F.2d 686 (D.C. Cir. 1989) (holding that "[a] foreign legal affairs ministry, attorney general, or other prosecutor, courts have repeatedly held, fits squarely within the section 1782 'interested person' category.").

**B.     The Court should exercise its discretion to grant the Application.**

As emphasized by the Supreme Court in *Intel*, once the statutory requirements are met, a district court is free to grant discovery in its discretion. *Intel*, 542 U.S. at 264-266. In exercising its discretion a district court should consider the following four discretionary factors: (*i*) whether the documents or testimony sought are within the foreign tribunal's jurisdictional reach, and thus accessible absent Section 1782 aid; (*ii*) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (*iii*) whether the Section 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the U.S.; and (*iv*) whether the subpoena contains unduly intrusive or burdensome requests. *See Intel*, 542 U.S. at 264-65. All four discretionary factors weigh in favor of granting the Application.

1.     The discovery sought is outside the Hong Kong court's jurisdictional reach and thus inaccessible absent Section 1782's aid.

As acknowledged by the Supreme Court in *Intel*, where the person from whom discovery is sought is not a party to the foreign proceeding, judicial assistance under Section 1782 may be the only avenue for discovery. *See Intel*, 542 U.S. at 264:

> [W]hen the person from whom discovery is sought is a participant in the foreign proceeding . . ., the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad. A foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence. In contrast, nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid.

Respondent Banks are not parties to the Hong Kong Litigation nor are they likely to be added. Further, the information sought relates to a Florida corporation over whom the Hong Kong

10

courts do not have jurisdiction. Accordingly, this factor weighs in favor of granting the Application.

> 2. The nature of the Hong Kong Litigation supports the discovery sought and the Hong Kong courts would be receptive to U.S. federal-court judicial assistance.

The nature of the Hong Kong Litigation supports the discovery sought. As described above, the evidence sought herein is consistent with the claims asserted in the Hong Kong Litigation in which the location of the funds from the Unauthorized Transfers is a key fact for the proper and just resolution of that dispute. Additionally, Banco Austro has inquired and is unaware of any restriction under Hong Kong law that discourages anticipated litigants from seeking discovery in the U.S. On the contrary, Hong Kong courts are known to routinely accept judicial assistance from U.S. courts. *See, e.g., In re: Application of David Esses for Assistance before a Foreign Tribunal,* 101 F.3d 873 (2d Cir. 1996) (affirming district court granting of application for discovery to be used in Hong Kong proceeding); *In re: Application of Kate O'Keeffe to Issue Subpoena for Taking Deposition of Production of Documents in Foreign Proceeding,* Case No. 2:14-cv-1518-RFB-CWH, 2015 U.S. Dist. LEXIS 37835 (D. Nev. Mar. 24, 2015) (granting 1782 application for discovery to be used in Hong Kong proceeding); *In re: Michael Erik A.B. Mak,* Case No. C 12-80118 MISC SI, 2012 U.S. Dist. LEXIS 75844 (N.D. Cal. May 31, 2012) (granting Section 1782 Request for discovery to be used in divorce proceeding in Hong Kong); *In re: Application of Nicholas T.C. Hill,* Case No. M19-117 (RJH), 2005 U.S. Dist. LEXIS 10838 (S.D.N.Y. Jun. 3, 2005) (granting Hong Kong court-appointed liquidators' 1782 application seeking information and financial records to facilitate liquidators in locating assets for creditors); *Pyrenee, Ltd. v. Wocom Commodities Ltd.,* 984 F. Supp. 1148, 1162 (N.D. Ill. 1997) (acknowledging that Hong Kong regularly secures third-party discovery from the United States); *In re: Letter of Request from the Supreme Court of Hong Kong,* 138

F.R.D. 27 (S.D.N.Y. 1991) (wherein the Hong Kong court sought assistance from the U.S. Attorney in obtaining evidence related to a criminal proceeding in Hong Kong).

Further, Banco Austro anticipates that the evidence obtained as a result of these proceedings will be readily available to the Hong Kong court before which the Hong Kong Litigation is currently pending. Accordingly, this factor too weighs in favor of granting the Application.

3. <u>Banco Austro is not seeking to circumvent foreign proof-gathering restrictions.</u>

Through this Application, which is entirely consistent with U.S. public policy, Banco Austro does not seek to circumvent proof-gathering restrictions in Hong Kong. Quite the contrary, the evidence to be gathered is relevant to and will be admissible in the Hong Kong Litigation. *See, e.g., In re App. of Hill,* 2005 U.S. Dist. LEXIS 10838 (granting 1782 application for discovery of financial information aimed at locating assets of partnership believed to have information about the location of assets Hong Kong liquidators sought to locate for distribution to creditors). That evidence is simply unobtainable in Hong Kong.

In this same vein, Banco Austro is not required to request the discovery sought herein from the Hong Kong High Court *before* filing this Application, nor would that be an available option given that Respondents are neither parties to the Hong Kong Litigation, nor subject to the jurisdiction of the Hong Kong Courts. *See In re O'Keeffe,* 2015 U.S. Dist. LEXIS 37835 (finding that application was not required to request discovery through Hong Kong court before seeking Section 1782 assistance); *In re Labor Court of Brazil*, 466 F. Supp. 2d at 1031 ("The statute does not require parties to first seek the discovery in the foreign tribunal"); *In re Malev Hungarian Airlines v. United Tech. Int'l Inc.*, 964 F.2d 97, 101 (2d Cir. 1992) ("We believe it was improper for the district court to predicate its denial of an application for discovery under 28

U.S.C. § 1782 on the absence of a request for assistance from the Hungarian court."). Accordingly, this factor also weighs in favor of granting the Application.

    4. <u>The requested discovery is neither unduly intrusive nor burdensome.</u>

In this respect, courts are directed to look at the requests in the aggregate under the prism of Rule 26, Federal Rules of Civil Procedure. *See In re Labor Court of Brazil*, 466 F. Supp. 2d at 1032. Here, the evidence sought is directly relevant to the claims asserted in the Hong Kong Litigation, is not protected from disclosure by any known privilege or doctrine, and is otherwise readily obtainable. Therefore, the Application is not unduly intrusive or burdensome.

## IV. CONCLUSION

The Application satisfies the statutory requirements and meets the discretionary factors to obtain assistance under 28 U.S.C. § 1782(a). Therefore, Banco Austro respectfully requests that the Court grant its Application and enter the Order attached hereto as **Exhibit A**.

Dated: June 12th, 2015.

            Respectfully submitted,

            Grant Stanton Smith, Esq.
            FL Bar No.: 100593
            VIVANCO & VIVANCO
            80 SW 8th Street, Suite 2000
            Miami, FL 33130